**Steven W. SCHRADER, Plaintiff,**

v.

**SHEET METAL WORKERS INT'L ASSN. LOCAL UNION # 20; Sheet Metal Workers Int'l Assn. Council for State of Indiana; and Sheet Metal Workers Int'l Association, Defendants.**

Civ. No. F 85–243.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 27, 1987.

---

Ronald E. James, Benson, Pantello, Morris & James, Fort Wayne, Ind., for plaintiff.

William R. Groth, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, Ind., Donald Fisher, Toledo, Ohio, Stephen J. Lerch; Levine & Lerch, Fort Wayne, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' three pending motions. Defendants move for partial summary judgment on two aspects of plaintiff's complaint. In the third motion, defendants seek to strike plaintiff's jury demand and request for punitive damages as they relate to Count VII of the complaint. For the reasons stated below, all of defendants' motions will be granted.

### I. Background

The facts, viewed in the light most favorable to the plaintiff, are as follows. Plaintiff, Steven W. Schrader (Schrader), is a member of defendant Sheet Metal Workers International Association (Union). In March, 1984, Schrader returned from employment in Meriden, Connecticut, and went to work for Schrader Construction Company, a business enterprise owned by his mother. Schrader Construction had once been a sheet metal contractor, but withdrew from membership in the Fort Wayne Area Sheet Metal Contractor's Association in 1981. It was a non-union contractor thereafter. Schrader understood that Schrader Construction was no longer doing sheet metal work when he began working for it in March, 1984.

Prior to Schrader's return from Connecticut, the Union had received complaints from its members that Schrader Construction was performing sheet metal work on a non-union basis. When Wayne Schrader, Schrader's father, telephoned representatives of the Union in March, 1984, and requested men for a sheet metal job, he was told that the men would be furnished only on condition that he sign a union contract. Wayne Schrader considered signing a contract at this time, but did not do so. At this point, Schrader and another Union member, Stuart Lewis, were working for Schrader Construction.

Following this contact, Keith Platt, a business representative of the Union, visited Schrader Construction on March 28, 1984, to determine whether any sheet metal work was being performed there. He observed evidence of such work, including sheet metal fittings, sheet metal hand tools, and rolls commonly used in sheet metal work. He also observed Schrader handling this material.

While Platt was in the shop, Wayne Schrader damaged Platt's parked car. Platt called the sheriff and remained on the premises until officers arrived and completed an accident report.

Platt filed charges against Schrader and Lewis on March 30, 1984. They read as follows:

Dear Sir and Brother:

I am filing charges against you for violation of Article Seventeen (17), Sections 1(b), 1(e), 1(g), 1(h), and 1(m), of the Sheet Metal Workers' International Association Constitution and Ritual (copy enclosed).

On March 28, 1984, while the local union was on Strike against the Fort Wayne Area Sheet Metal Contractors' Association, I found you working for Schrader Company at his shop in Huntertown, Indiana. The Schrader Company is a former member of the Contractors' Association, but to my knowledge is now a non-union contractor.

I will ask that these charges be read at the April 16, 1984, union meeting to be held at 3019 Waynewood Drive, Fort Wayne, Indiana, at 7:30 P.M. Your Trial Committee will be selected at that meeting.

Please refer to Article Eighteen (18), Section 2 of the Sheet Metal Workers' International Association Constitution and Ritual.

Photocopies of the sections of the International Constitution that Platt contended Schrader had violated were enclosed with the letter of charges. These sections read:

SEC. 1(b). Refusal or failure to perform any duty or obligation imposed by this Constitution, the policies of this Association, the valid decision of any officer or officers thereof or the valid decisions of the General Executive Council or Convention or the valid rules and regulations of any local union or council.

SEC. 1(e). Violating the established union, collective bargaining agreements and rules and regulations of any local union relating to rates of pay, rules and working conditions.

SEC. 1(g). Accepting employment in any shop or on any job where a strike or a lockout, as recognized under this Constitution, exists.

SEC. 1(h). Agreeing to perform or performing any sheet metal work covered by the claimed jurisdiction of this Association on a piecework basis, a lump sum basis, or any other basis except that provided and specified by this Constitution and by the established and recognized union agreements, rules and regulations of affiliated local unions and councils governing the employment of members.

SEC. 1(m). Engaging in any conduct which is detrimental to the best interests of this Association or any subordinate unit thereof or which will bring said unions into disrepute.

Schrader attended the April 16, 1984, meeting at which time the charges contained in the letter he had received were read to him. A trial committee (committee), consisting of the predecessor local's executive board, was selected to hear the charges. The individual names of the committee members were not recited; rather, the board as a whole was named. Schrader made no objection to the composition of the committee or the method by which it was selected.

By a letter dated April 20, 1984, Schrader was informed that his trial would take place on May 10, 1984. The letter specified the time and place for the trial. Schrader did not appear for his trial, and after waiting twenty minutes, the committee tried him in absentia. Schrader was in Toledo at the time, and testified in his deposition that he felt it was no use attending the trial, and that he would find out about it after it took place. Platt testified at the trial that he had seen evidence of Schrader Construction performing sheet metal work on a job in Delphi, Indiana, in December, 1983. He also related the events of March 28, 1984, when he had visited Schrader Construction and made similar observations. His testimony included the incident involving damage to his car.

The trial committee found Schrader guilty as charged, and fined him $7,500.00. The Union membership approved the fine

at meetings held on June 18 and July 14, 1984. Schrader was informed of these actions in a letter dated July 26, 1984.

Schrader pursued two levels of appeal under the provisions of the International Constitution. He did not attempt an appeal to the International's General Convention.

## II. Motions for Partial Summary Judgment

### A. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, — U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, — U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *Valentine v. Joliet Tp. High School Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986).

■ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex*, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 106 S.Ct. at 2511.

Substantive law determines which facts are material; that is, which facts might effect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S.Ct. at 2512.

### B. Fair Disciplinary Procedures

■ The Union's first motion for partial summary judgment attacks the sufficiency of Schrader's complaint regarding the treatment he received in the events culminating in the imposition of the $7,500 fine against him by the Union. This aspect of Schrader's complaint, contained in Counts I, IV, V, and VI, is premised on a violation 29 U.S.C. § 411(a)(5), part of the bill of rights section of the Labor-Management Reporting and Disclosure Act of 1959 (§ 411(a)(5)). This statute reads as follows:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by

any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

The obvious parallel between these protections and those afforded suspected criminals is tempered by federal labor policy which calls for minimal government involvement in labor matters. Thus, in *International Brotherhood v. Hardeman,* 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), the Supreme Court held that the "written specific charges" language § 411(a)(5)(A) need only be specific enough to inform the accused member of the offense that he has allegedly committed. It also quoted the following legislative history with approval:

[T]he bill of rights in the Senate bill requires that the union member be served with written specific charges prior to any disciplinary proceedings but it does not require that these charges, to be valid, must be based on activity that the union had proscribed prior to the union member having engaged in such activity.

401 U.S. at 244, 91 S.Ct. at 616 (quoting remarks of Sen. Goldwater, Labor-Management Reform Legislation, Hearings before a Joint Subcommittee of the House Committee on Education and Labor, 86th Cong., 1st Sess., pt. 4, p. 1595 (1959)). In *Hardemen,* the charge at issue contained no citation to union regulations, but did contain a detailed statement of facts. This notice was sufficient for purposes of § 411(a)(5)(A).

The Court also addressed the sufficiency in the disciplinary proceeding in that case. It held that its review of whether a "full and fair" hearing occurred pursuant to § 411(a)(5)(C) was limited to determining whether there was "some evidence" to support the charge. A stricter standard "would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs." 401 U.S. at 246.

*Hardeman* illustrates that there is a certain degree of tension between ensuring that union members receive fair treatment and allowing unions to run their own affairs. The most extensive treatment of these issues in the Seventh Circuit is found in *Frye v. United Steelworkers of America,* 767 F.2d 1216 (7th Cir.1985). This case reiterated the standards set forth in *Hardeman* regarding the degree of specificity necessary in informing a member of charges which subject him to union discipline. It also elaborated on specific points which are germane to the instant dispute. To support a violation of § 411(a)(5)(A), the court held that the plaintiff must demonstrate that he was misled or otherwise prejudiced in the presentation of his defense by the inadequate notice of the charges. 767 F.2d at 1223. With regard to the "full and fair hearing" requirement of § 411(a)(5)(C), the plaintiff in *Frye* claimed that the tribunal was biased against him because of his historical opposition to union leadership. In itself, however, this allegation was not enough to show a violation of this requirement. Rather, "charges that bias undermined the fairness of a disciplinary proceeding must be supported by specific factual allegations from which the operation of the bias can be inferred." *Id.* at 1225. Thus, in interpreting these two aspects of § 411(a)(5), *Frye* leaned more toward the side of protecting union autonomy rather than expanding procedural protections more appropriately reserved for criminal proceedings. This conclusion was supported subsequently in *Gustafson v. American Train Dispatchers' Assn.,* 788 F.2d 1284, 1287 (7th Cir.1986); *see also Tincher v. Piasecki,* 520 F.2d 851, 854 (7th Cir. 1975).

Against this background, Schrader's complaint presents three facets that merit consideration: (1) whether the notification of the charges was adequate; (2) whether the nature of the evidence at his trial prevented a full and fair hearing; and (3) whether bias of the trial committee prevented a full and fair hearing. Schrader claims other irregularities, but they contain little substance and are easily disposed of. For example, he tracks the language of § 411(a)(5)(B) by claiming that he was not given adequate time to prepare for his hearing. The uncontradicted evidence, however, indicates that notice of the charges was provided to Schrader in com-

pliance with the union constitution, and that a period of 41 days transpired between Schrader's receipt of the notice and the date his trial took place. Between these dates, Schrader's trial committee was selected at a meeting which he attended. He made no objection to the committee's composition. Thus, he has no basis on which to claim that he had inadequate time to prepare for his trial. *Simmons v. Avisco, Textile Workers Local 713,* 350 F.2d 1012, 1017 n. 9 (4th Cir.1965).

## 1. Adequacy of Notice

The most substantial aspect of Schrader's complaint is whether the notification he received of the charges against him complied with § 411(a)(5)(A). Cases previously discussed have focused on the significance of omitting any reference to specific provisions of the union constitution or bylaws at issue. Such cases have not imposed this requirement provided that the factual allegations are specific enough to place the member on notice of the conduct which subjects him to possible discipline. In this case, the evidence shows that the letter informing Schrader of the charges included a copy of the applicable constitutional provisions. Schrader argues, however, that there was a significant discrepancy between the letter which charged him with working for a "non-union contractor" and the constitutional violation of performing "non-union sheet metal work." As a result, he was misled as to the nature of the charges which he faced.

Taken as a whole, the charging letter is not so misleading as Schrader would have this court believe. Its factual allegations refer first to the current strike against the "Fort Wayne Area Sheet Metal Contractors' Association." The next sentence identifies Schrader Construction as a former member of the "Contractors' Association." There can be no doubt that this term refers to the sheet metal contractors' association, though the words "sheet metal" are omitted. The balance of this sentence notes that Schrader Construction is now a "non-union contractor." Despite its apparently generic reference to Schrader Construction as a non-union contractor, the gist of the entire paragraph clearly alleges that

Schrader was performing work for a non-union *sheet metal* contractor.

■ Construing the terms of the letter, however, is a factual rather than a legal question. Consequently, the court is bound to accept all inferences derived from the letter in favor of Schrader in this motion. Even if the letter only charges him with working for a non-union contractor, however, it is still adequate to meet the notice requirements of § 411(a)(5)(A). This is so because at least one of the constitutional provisions cited in the letter and provided as an attachment to it, proscribes conduct which is "detrimental to the best interests of this Association ... or which will bring said unions into disrepute." Article 17, Sec. 1(m). This provision is broad enough to encompass non-union work as charged in the letter. Thus, Schrader misconstrues the constitution when he argues that it proscribes only the performance of non-union sheet metal work.

Consequently, when the charging documents as a whole are considered, there is no basis for the claim that Schrader received inadequate notice of the conduct for which he was being tried. Applying the standards set forth by the Supreme Court and the Seventh Circuit, and construing the evidence in the light most favorable to Schrader, there is no merit to his contention that he was misled or prejudiced by the notification he received regarding the charges for which he was disciplined.

## 2. Sufficiency of the Evidence

■ The standard of review of union disciplinary proceedings as set forth in *Hardeman, supra,* is quite limited. To satisfy the requirement of § 411(a)(5)(C) that a member receive a full and fair hearing, the union must show only that there was "some evidence" to support the result it reached. The role of this court, therefore, is to examine the evidence presented to the trial committee. The court is not called on to reweigh the evidence and come to its own conclusion *de novo.*

■ With this standard in mind, there is no doubt that "some evidence" was presented to the trial committee to support

the charges. Specifically, Platt testified as to his observations of March 28, 1984, at Schrader Construction, summarized at the beginning of this order. It is irrelevant what Schrader may have believed at the time regarding the type of work performed at Schrader Construction, or even whether any sheet metal work was actually performed there. Platt testified that he saw evidence of sheet metal work being performed at Schrader Construction by Schrader, and the committee chose to credit his testimony. This constitutes some evidence to support the charges.

 Also irrelevant is Schrader's complaint that the committee heard too much. That is, Schrader argues that Platt's testimony regarding the damage to his car by Schrader's father has nothing to do with the charges against Schrader, and was highly prejudicial. Again, Schrader wants this court to apply the more stringent evidentiary standards which ordinarily apply in proceedings in this court. In the context of union disciplinary hearings, such standards simply do not apply. This court does not sit as another court to which Schrader may appeal. Rather, its function is solely to ensure that minimal due process considerations as they apply in the context of § 411(a)(5) are respected. Those considerations, as set forth in previously cited authorities, have been met in this case.

### 3. Bias of the Trial Committee

 Schrader contends that the full and fair hearing required by § 411(a)(5)(C) was violated because the committee that heard his case was biased against him. This bias, he argues, stems from some of these members' ongoing disagreements with and harassment of Schrader Construction over several years in connection with the employment of union labor. He further argues that he was not aware of this danger because the committee was designated simply as "the former executive board" of the local's predecessor at a union meeting which Schrader attended. Specific names of the former executive board were not used.

Schrader's concern regarding the group appointment rather than appointment by listing individual names of the committee has no merit. He attended the meeting where the committee was appointed. He had ample opportunity to challenge its composition, but made no inquiry of any kind. The process of appointing "the former executive board" was clearly a matter of convenience, since this method had been used in previous disciplinary matters. Certainly, there is no question of hiding the identities of the individuals within this group. There has been no indication that their names, even if not already well-known within the membership, would not have been provided had Schrader taken the most preliminary step of asking who the individuals members of the board were.

In addition, the expressed concern of Schrader arising out of this appointment process is not well-founded. He implies that he would have made some objection had he known of the individual identities of the committee. If his concern, however, involved the potential bias of these members due to longstanding disagreements with Schrader Construction, the fact that they were collectively identified as the former executive board of the predecessor local was just as likely, if not more so, to put him on notice of this particular concern.

 The more substantial element of this aspect of Schrader's complaint premised on § 411(a)(5)(C) involves the effect of a biased committee. A biased committee will not result in a full and fair hearing as required by the statute. The question is what constitutes such bias. There are two aspects of Schrader's complaint in this regard. First, he generally refers to the bias arising out of the alleged feud over the years between the Union (hence, members of the committee) and Schrader Construction. At his deposition, Schrader was unable to substantiate this suspicion of bias with more specific information. Second, Schrader contends that the committee was also tainted because one of its members made an isolated statement to the effect that if a union member were charged with a violation of the constitution, he was probably guilty.

■ Concern over general bias of a committee due to hostility was addressed in *Frye, supra:*

> While a history of conflict and animosity between a member of a union and its governing body may set the stage for harsh or improper treatment of that member, charges that bias undermined the fairness of a disciplinary proceeding must be supported by specific factual allegations from which the operation of bias can be inferred.

*Frye,* 767 F.2d at 1224. The court then held that Frye's allegations of bias because of his historical opposition to union leadership failed to meet this standard. Schrader's allegations in this regard are no more specific, and are one step removed from the conflict alleged in *Frye* in that the hostility in this case relates not to Schrader directly, but to his family's business. That a union should harbor ill will toward an employer who resists employing union labor is hardly surprising. Schrader has provided no specific basis for connecting this ill will to the union's treatment of him at his trial. Consequently, his general allegation of bias of the committee has no merit.

Schrader's second allegation of bias concerns the bias of one of the members of the committee because of his prejudicial statement regarding the probable guilt of a member who has been charged with a violation. Schrader refers to a statement made by Ronald Ray McConnehey, a member of the committee, at his deposition. During the deposition, the following colloquy took place:

> Q. Weren't there other members working on strike besides those charged?
> A. Possible.
> Q. Those jobs do not result—that did not result in charges, what set them apart?
> A. These men were caught working. I'm not saying that there couldn't have been 50 other ones working, these men were caught working doing sheet metal work while we were on strike.
> Q. So the qualification was, they were doing sheet metal work?
> A. Yes.

> Q. If they were not doing sheet metal work, they wouldn't be charged?
> A. This is correct.

McConnehey dep. at 13.

■ It is clear that a demonstration of bias by even one member of a trial committee may prevent a full and fair hearing from taking place. *Goodman v. Laborers' Int'l Union of North America,* 742 F.2d 780, 784 (3d Cir.1984); *Tincher, supra,* 520 F.2d at 855. Schrader's evidence on this point, however, fails as a matter of law to raise an inference of such bias. *Goodman,* for example, involved a member being tried by a committee in which six of its seven members had been removed from their positions as shop stewards by the disciplined member. Similarly, *Tincher* involved a trial committee member who had been subject to an earlier charge brought by the defendant. While such obvious indicia need not be the only way of demonstrating bias, the deposition testimony quoted above, the only source of McConnehey's alleged bias in the record, fails to rise to even a minimal showing of bias. Rather, McConnehey merely agreed with a characterization made by Schrader's attorney in an effort to clarify why some members who performed sheet metal work during a strike were charged and others were not. Without additional and more specific evidence, this isolated affirmative response to a single deposition question cannot be inflated and manipulated to show bias for purposes of § 411(a)(5)(C).

Therefore, none of the evidence in this case shows that a genuine issue of material facts exists with regard to those counts addressed to violations of § 411(a)(5). Consequently, the Union's motion for partial summary judgment as to Counts I, IV, V, and VI will be granted.

**C. Secondary Boycott**

■ The Union's second motion for partial summary judgment concerns Count II of Schrader's complaint. This count alleges that the same facts discussed at the outset of this order constitute a violation of § 8(b)(4) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4) (§ 8(b)(4)). It

seeks damages for this alleged activity pursuant to § 303 of the Labor-Management Relations Act, 29 U.S.C. § 187 (§ 303).

The Union argues that the evidence fails to support a claim under § 8(b)(4), which proscribes secondary activity. In addition, the Union seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure for Schrader's unreasonable conduct in pursuing this allegedly meritless claim.

Section 8(b)(4) reads in part:

(b) It shall be an unfair labor practice for a labor organization or its agents—

(4) ... (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where ... an object thereof is—

> (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees....

This statute concerns "secondary activity." In *Landgrebe Motor Transport, Inc. v. Dist. 72, Int'l Assn. of Machinists and Aerospace Workers*, 763 F.2d 241, 244 (7th Cir.1985), the Seventh stated:

> Secondary activity may be defined as activity in which the union applies economic pressure to a person with whom the union has no dispute regarding its own terms of employment in order to induce that person to cease doing business with, and thereby increase the pressure on, another employer, called the primary employer, with whom the union does have such a dispute.

This language indicates that secondary activity envisions the involvement of two employers: the primary employer and the secondary employer.

Schrader's apparent theory in Count II, according to answers he has provided to interrogatories, is that in charging, trying, and fining Schrader, the Union attempted to prevent him from doing business with Schrader Construction. Thus, Schrader, in effect, is the secondary employer (or person), who was used by the Union to apply pressure to Schrader Construction, the primary employer. Yet Schrader argues that the evidence clearly shows that Schrader Construction was not a primary employer. Rather, Schrader asks the court to stretch the concepts related to § 8(b)(4) beyond recognizable bounds in order to accommodate his improbable theory. For example, he argues that two employers are not necessary because the actual wording of the statute refers to "persons." The Seventh Circuit's requirement of two employers in its *Landgrebe* definition quoted above need not be followed, argues Schrader, since the court said that secondary activity *may* (not must or shall) be so defined.

■ It is true that § 8(b)(4) requires some degree of flexibility. Courts have long recognized, for example, that a literal application of the word "person" in the statute is impossible since it would outlaw all strikes, which by their nature, attempt to force a "person" (an employer) to cease doing business with other "persons" (the employer's customers and suppliers). *See* NLRB v. Int'l Rice Milling Co., 341 U.S. 665, 74 S.Ct. 961, 95 L.Ed. 1277 (1951). Such flexibility, however, requires that the underlying purpose of § 8(b)(4) is respected: to protect a neutral employer who, through no fault of its own, finds itself in the cross-fire of two other parties' labor dispute. *Palm Beach Co. v. Journeymen's and Production and Allied Services*, 519 F.Supp. 705, 712 n. 11 (S.D.N.Y. 1981).

■ In the case at bar, this scenario simply does not exist. First, it is unclear with whom the Union has the alleged labor dispute: is it Schrader because of his non-union work, or is it Schrader Construction because of its historic resistance to employing union labor? This confusion likewise makes it impossible to determine the identity of the maligned neutral party.

It is not the facts, however, which render this claim confusing. The facts show that the Union imposed discipline on one of its members for violating its constitution. Unless such discipline contravenes an aspect of federal labor policy, which the record

herein does not show, the Union is free to deal with its members subject only to the minimal due process protections afforded by § 411(a)(5) discussed above in connection with the Union's first motion for partial summary judgment. The complexity in this claim stems primarily from Schrader's attempt to impose the provisions of § 8(b)(4) on a situation to which they simply do not apply.

Consequently, it is unnecessary to treat in any depth the parties' arguments regarding the true meaning of "person" in § 8(b)(4), or the further argument that even if Schrader makes out a § 8(b)(4) claim, he has no standing to raise it under § 303. The Union's motion can be granted for the more fundamental reason that the relationships among the actors, however they may be characterized, show no resemblance to secondary activity as defined in *Landgrebe*. If the nature of the actors were relevant, that case clearly requires the involvement of two employers, and the authorities cited by Schrader do not persuade this court that this requirement should be more broadly construed.

■ Should Schrader have overcome even this hurdle, it is equally clear that he has no standing to assert the rights of Schrader Construction who was allegedly harmed by the Union's secondary activity. Courts have held in a variety of factual situations, none of which are so different from the case at bar that they are distinguishable, that employees may not sue for damages pursuant to § 303 arising out of secondary activity. *See, e.g., Prater v. United Mineworkers of America*, 793 F.2d 1201, 1204–05 (11th Cir.1986); *Charvet v. Int'l Longshoreman's Assn.*, 736 F.2d 1572, 1576–77 (D.C.Cir.1984); *Fulton v. Plumbers and Steamfitters*, 695 F.2d 402, 407–08 (9th Cir.1982). As a result, the Union's motion for partial summary judgment on this issue will be granted.

■ The Union also requests an award of sanctions pursuant to Rule 11 for Schrader's insistence on maintaining this claim despite repeated unsuccessful attempts by the Union to have Schrader clarify its basis. The foregoing discussion illustrates that this claim indeed has no substantial legal foundation. It is not so base-

less, however, to merit an award of sanctions. This is true for several reasons. First, § 8(b)(4) has inherent complexities which have plagued courts and litigants for years. It makes no direct reference to "secondary activity," and this term has undergone continuing evolution since the statute went into effect. Second, the main argument pressed by the Union in this motion has been that individual employees are not covered either within the term "person" as it appears in § 8(b)(4), or the term "whoever" in connection with injured parties in § 303. Most cases have construed these terms in a manner consistent with the Union's position, but the fact remains that the Seventh Circuit has not passed directly on these questions, and also that Schrader's broad interpretation has found support in at least one other circuit. *See Wells v. Int'l Union of Operating Eng'rs*, 303 F.2d 73, 75 (6th Cir.1962). Thus, there is enough ambiguity in the resolution of this question to take Schrader's claim in Count II outside the realm of the completely frivolous. To award sanctions in this situation would have an undesirable chilling effect on those who would press marginal but still arguable questions of law. Consequently, the Union's request in this regard will be denied.

Therefore, the Union's motion for partial summary on Count II of the complaint will be granted. Its request for sanctions pursuant to Rule 11 will be denied.

### III. Motion to Strike

■ While Schrader seeks punitive damages and requests a trial by jury in connection with all counts of the complaint, the Union's third motion concerns Schrader's claim for punitive damages and request for a jury trial only as they relate to Count VII of the complaint. This count is based on an allegation that the Union breached its duty of fair representation to Schrader in failing to refer jobs to him through its hiring hall. Count VII does not make reference to the statutory basis underlying it, but presumably this claim alleges a violation of § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) (§ 301(a)).

Both the Supreme Court and the Seventh Circuit have held that punitive damages are not available against a union in a § 301(a) suit. *Int'l Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 52, 99 S.Ct. 2121, 2127, 60 L.Ed.2d 698 (1979); *Lewis v. Local 100, Laborers' Int'l Union,* 750 F.2d 1368, 1381–82 (7th Cir.1984). Schrader's reliance on an Indiana statute, I.C. 34–4–30–1, which authorizes treble damages for willful damage to property, is unavailing since it conflicts with federal labor policy as set forth in *Foust* and *Lewis,* and is therefore preempted. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

The second aspect of the Union's motion to strike argues that Schrader has no right to have a jury pass on the breach of the duty of fair representation issue in Count VII. The availability of a jury to hear any given issue is controlled by the Seventh Amendment. In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court set out the elements for determining whether such a right exists: (1) pre-merger (of law and equity) custom, (2) the remedy sought, and (3) the practical abilities and limitations of juries.

■ An employee's claim against a union is an unfair labor practice. *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 302 (7th Cir.1983). An unfair labor practice is not of the same nature as those for which a jury trial was available in common law. *Spicher v. Wilson Foods Corp.,* 122 L.R.R.M. (BNA) 3168, 3170 (C.D.Ill.1985) [Available on WESTLAW, DCTU database]. Therefore, a § 301(a) claim fails on the first prong of the *Ross* test. It is unnecessary to consider the other two. No jury trial is available on Schrader's § 301(a) claim. Accordingly, both aspects of the Union's motion to strike will be granted.

### IV. Conclusion

For all of the reasons set forth above, it is ORDERED that the Union's motion for partial summary judgment as to Counts I, IV, V, and VI is GRANTED. The Union's motion for partial summary judgment as to Count II is GRANTED. The Union's request for Rule 11 sanctions in connection with Count II is DENIED. The Union's motion to strike Schrader's requests for punitive damages and a jury trial as they relate to Count VII is GRANTED. Consequently, the only remaining counts in this case are Count III, and Count VII as modified by this order.