**Bernard FRYE, Plaintiff-Appellant,**

v.

**UNITED STEELWORKERS OF AMERICA, Harry Mayfield, Robert Johns, Joseph Coyle, William Moller, and Local Union 3489, Defendants-Appellees.**

No. 84–1772.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1985.

Decided July 11, 1985.

Rehearing and Rehearing En Banc Denied Aug. 15, 1985.

**1218**

Laurence Englestein, Depres, Schwartz & Geohegan, Chicago, Ill., for plaintiff-appellant.

James B. Robinson, United Steelworkers of America Legal Dept., Pittsburgh, Pa., for defendants-appellees.

Before ESCHBACH and FLAUM, Circuit Judges, and DOYLE, Senior District Judge.*

FLAUM, Circuit Judge.

Plaintiff Bernard Frye brought suit under the Labor-Management Reporting and Disclosure Act (LMRDA) against the International Union of the United Steelworkers of America (USWA) and Local Union 3489, as well as officials of both bodies, alleging that discipline imposed on him for incidents that occurred while Frye was president of the local union had been imposed in violation of sections 101(a)(2), 101(a)(5), and 609

of the LMRDA, 29 U.S.C. §§ 411(a)(2), 411(a)(5), & 529 (1982). The district court granted summary judgment for the defendants. For the reasons set out below, we affirm.

### I.

Frye was elected to a three-year term as president of Local 3489, USWA, in 1973.[1] During 1975, internal union charges were filed against Frye and others by James Stivertson and Morey Swanders, members of the Local.[2] Early in 1976, the Local's Trial Committee heard the charges separately and ruled, in both cases, that Frye was not guilty. The Local's membership accepted the Trial Committee's report; Stivertson and Swanders then appealed to the International's Executive Board. Several months later, in April 1976, Frye lost a bid for reelection as president of the Local. For reasons not disclosed in the record, the International put Local 3489 into an administratorship from July to December 1976. During this administratorship, another member of the Local, Robert Mix, who was the recording secretary during Frye's presidency, filed certain "requests" with the International; these documents contained additional charges against Frye.[3]

Under procedures established by the International, the Stivertson and Swanders appeals were delegated to the Appeal Panel, a subcommittee of the Executive Board

---

* The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

1. During the years of his presidency, Frye was involved in litigation with both the Local and International unions over events surrounding an earlier, unsuccessful attempt to become president. That separate action was commenced in 1970 and was decided by this court in *Brennan v. Local 3489, United Steelworkers of America,* 520 F.2d 516 (7th Cir.1975), *aff'd sub nom., Local 3489, United Steelworkers of America v. Usery,* 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977). Those decisions held that a provision of the International's constitution that required a member to have attended at least one-half of the meetings of his local in order to run for union office was unreasonable and violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e) (1982).

2. The Stivertson charge related to Frye's handling of a collective bargaining agreement provision limiting the time an employee could hold the position of temporary foreman. Frye construed the provision in a way that would force Stivertson to give up that post earlier than he would have to according to the employer's construction of the provision. The Swanders charge concerned Frye's alleged violation of Swanders's seniority rights by illegally giving preferential seniority to another individual. The details of these charges are fully set out in the NLRB decision. *United Steelworkers of America* (Frye), 239 NLRB 374 (1978).

3. The Mix charges consisted of various allegations that Frye and others had claimed payments for time spent on union business when, in fact, they had been on personal business. These charges are also discussed in greater detail in the NLRB decision.

that designated a Commission to investigate the appeals. When the International received the Mix charges, those charges were referred to the same Commission. After some delay caused by postponed hearing dates and a change in the membership of the Commission, hearings were held on November 16, 1976 (Swanders appeal) and December 15, 1976 (Stivertson appeal and Mix charges); neither of these proceedings was transcribed into a written record.

The Commission issued separate opinions on each of the matters in April 1977. In these opinions, the Commission recommended that Frye be found guilty on both the Stivertson and Swanders complaints and on two of the Mix charges. As punishment, the Commission recommended that Frye be suspended from holding local union office for three years; other defendants were to be reprimanded. The Commission noted that the recommended discipline was based only on the Stivertson and Swanders charges. The Appeal Panel, acting for the Executive Board, adopted these recommendations and held, in addition, that the two Mix charges could also provide grounds for Frye's discipline; the penalty, however, was not changed. Frye appealed the Board's decision to the International Convention, and the Convention affirmed the decision on September 22, 1978.

Immediately after the Commission issued its report, Frye filed an unfair labor practice charge with the National Labor Relations Board (NLRB). The charge filed with the NLRB alleged that the International had violated section 8(b)(1)(A) of the National Labor Relations Act (LMRA), 29 U.S.C. § 158(b)(1)(A) (1982), by imposing the discipline described above. The General Counsel issued a complaint, and there was a hearing before an administrative law judge (ALJ). The ALJ dismissed the complaint, finding that there was "more than ample evidence" to support the findings and recommendations of the Commission and that the Commission had had "reasonable" grounds for imposing the penalty. The ALJ's decision was then affirmed by the NLRB, *United Steelworkers of America* (*Frye* ), 239 N.L.R.B. 374 (1978). Frye did not appeal the NLRB decision.

In the civil action now on appeal to this court, both parties filed motions for summary judgment in the district court. As set out by the district judge, the three issues raised were the following:

1. Whether Frye was disciplined for exercising rights of free speech and assembly, in violation of sections 101(a)(2) and 609 of the LMRDA.
2. Whether Frye was disciplined without being served with written specific charges, in violation of section 101(a)(5) of the LMRDA.
3. Whether Frye was disciplined without being afforded a full and fair hearing, in violation of section 101(a)(5) of the LMRDA.

Summary judgment was granted for the defendants on all issues. On appeal, Frye challenges all aspects of the district court's decision.

## II.

With respect to the claims based on sections 101(a)(2) and 609, dealing with a union member's rights to freedom of speech and assembly, the district court held that in the NLRB action, based on the same issues in connection with the LMRA unfair labor practice charge, the parties had fully and fairly litigated the same facts and circumstances and that the findings of fact of the NLRB should be given preclusive *res judicata* or collateral estoppel effect, citing *United States v. Utah Construction Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). In *United States v. Utah Construction Co.*, the Supreme Court made the following statement:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

384 U.S. at 422, 86 S.Ct. at 1560.

■ This court has stated that administrative agency decisions may be made bind-

ing by the doctrines of collateral estoppel or *res judicata* when it is appropriate to do so in light of the underlying principles set forth in 1 *Restatement (Second) of Judgments* §§ 27 & 28 (1982).[4] *Porter & Dietsch, Inc. v. Federal Trade Commission*, 605 F.2d 294, 300 (7th Cir.1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1597, 63 L.Ed.2d 784 (1980); *Bowen v. United States*, 570 F.2d 1311, 1320–22 (7th Cir. 1978). In *Lightsey v. Harding, Dahm & Co., Inc.*, 623 F.2d 1219 (7th Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 855, 66 L.Ed.2d 799 (1981), we reviewed the requirements that must be met for an agency decision to be given collateral estoppel effect. First, the original action must have been properly before the agency. If so, "the court must find that the same disputed issues of fact were before [the administrative agency] as are before the court, that the agency acted in a judicial capacity, and that the parties had an adequate opportunity to litigate the issues before the agency." *Id.* at 1221.

In the present case, it is conceded that Frye's case was properly before the NLRB and that the agency acted in a judicial capacity. There is also no dispute about the opportunity the parties had to litigate the issues. Instead, Frye disputes the propriety of applying collateral estoppel on three bases: 1) that the NLRB decision was based on the LMRA rather than the LMRDA; 2) that the LMRDA issue is outside the NLRB's area of traditional expertise; and 3) that the findings of the NLRB do not specifically address all the allegations in the present LMRDA charge.

■ Frye's first two arguments, based on the policy differences between the LMRDA and the LMRA, overlook an important aspect of collateral estoppel. Collateral estoppel is allowed to prevent the relitigation of any legal or factual issue that has been "actually litigated and determined by a valid and final judgment." 1 *Restatement (Second) of Judgments* § 27 (1982), quoted in *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir.1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983). An express finding of fact or finding of law in the earlier judgment is sufficient to give it preclusive effect, *id.*, if that finding was necessary and essential in the earlier judgment. *See Wickham Contracting Co., Inc. v. Board of Education*, 715 F.2d 21, 28 (2d Cir.1983) (collateral estoppel improper because the relevant factual finding had not been critical and essential in the earlier action and therefore the parties' incentive to litigate that fact would have been different); *Nasem v. Brown*, 595 F.2d 801, 804 (D.C.Cir.1979) (collateral estoppel could attach to a finding that *had* to be reached but not where a judgment could be based upon one of several alternative grounds and did not expressly state which one). Therefore, it is not the similarity between the types of litigation or actions involved but between the factual issues and their roles in the respective actions that is important.

At the heart of both the NLRB action and the first issue of the case before us is Frye's contention that the union's institution of charges against him and its application of discipline were motivated by a desire to retaliate against him for earlier actions that union leaders may have felt had adverse effects on the union.[5] As the

---

**4.** Section 27 of 1 *Restatement (Second) of Judgments* (1982) sets out the general rule of issue preclusion:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Section 28 lists five recognized exceptions to this general rule.

**5.** In the decision adopted by the NLRB, the ALJ described these protected activities as including "running for union office and supporting various candidates in their campaigns for union office in opposition to incumbent union officials, performing the duties and responsibilities of an officer of the Local by warning other union members of their potential loss of employment status under the contract, [and] pursuing procedures under the [LMRDA] to challenge certain of Respondent's conduct and constitutional provisions." *See supra* footnote 1.

district court noted and Frye concedes on appeal, the protection from restraint or coercion by a labor organization given to union members under section 8(b)(1)(A) of the LMRA has been recognized as extending to their rights under the LMRDA. *Carpenters Local Union No. 22*, 195 N.L. R.B. 1 (1972). Therefore, the identity of issues, and incentives to litigate the factual findings on which the issues would be resolved, is total in this case.

Frye argues, however, that the NLRB does not decide LMRDA claims in the same fashion as the federal courts decide them. Specifically, he asserts that although the NLRB does rule on LMRDA claims, it is more restrictive in its review and uses a different standard to determine if there has been a violation of protected rights. In making this assertion, Frye acknowledges that he is asking this court to refute the holding of *Nix v. Fulton Lodge No. 2, I.A.M.*, 452 F.2d 794 (5th Cir.), *cert. denied*, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). In *Nix*, the plaintiff had alleged that the union's wrongful discipline had resulted in his discharge from employment and expulsion from union membership, in violation of section 101(a)(2) of the LMRDA. In an earlier unfair labor practice charge, based on LMRA sections 8(a)(1) and 8(a)(3), the NLRB had found that his discharge was due to misconduct on the job, not his union membership or activity. The Fifth Circuit held that the earlier NLRB decision had preclusive effect and dismissed the later suit. *Nix* has been cited by a number of other circuits as standing for the proposition that issue preclusion in this situation is appropriate.

 It is true that actions based on one statute should not automatically be given preclusive effect in actions based on another statute. *Tipler v. E.I. duPont de-Nemours & Co.*, 443 F.2d 125, 128 (6th Cir.1971). And it is also true that considerations of fairness can make application of collateral estoppel inappropriate for a number of reasons. *Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 332, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). However, when all factors required for collateral estoppel are present, it is the party opposing preclusion who must demonstrate that applying collateral estoppel in a specific case would result in particularized unfairness, *see Wickham*, 715 F.2d at 26. It is not enough to argue, however persuasively, that there are theoretical differences that could potentially lead to unfairness and make collateral estoppel inappropriate. We are not required to determine if there might be situations in which differences in the way LMRDA and LMRA determinations are made that could, in some situations, lead to a result different than that in *Nix*. We need only determine if the analysis actually applied in this NLRB proceeding was so unlike the analysis that would have been applied by a district court that application of collateral estoppel would be inappropriate in this case. *See generally* 1 *Restatement (Second) of Judgments* § 28(2) & (3) (1982).

Reviewing the thorough decision of the ALJ and the record on which it is based, we conclude that none of the potential sources of unfairness hypothesized by Frye make reliance on the NLRB decision unfair in this case.[6] The allegations made by the General Counsel in the LMRA action were the same as those made by Frye in his LMRDA action. The ALJ did in fact review all claims of procedural error raised in the LMRA claim, as well as claims based

---

**6.** The differences cited by Frye stem from distinctions between the LMRDA and other national labor legislation that were noted by the Supreme Court in *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 237–40, 91 S.Ct. 609, 612–14, 28 L.Ed.2d 609 (1971), which held that the NLRB does not have exclusive jurisdiction over Title I of the LMRDA. Frye argues that the NLRB, unlike federal courts, considers claims based on LMRDA rights only in the context of the general policy of all labor laws, citing to *Schofield v. NLRB*, 394 U.S. 423, 430, 89 S.Ct. 1154, 1158, 22 L.Ed.2d 385 (1969) and *Central Florida Sheet Metal v. NLRB*, 664 F.2d 489, 494 (5th Cir.1981). This approach, he contends, results in the NLRB's applying more stringent criteria for recognizing a Title I violation than would be applied by the courts and giving limited attention to other factors (such as procedural irregularities) considered by the courts in determining if there has been a violation.

on the merit (or the alleged lack thereof) of the charges and on the disproportionate penalty imposed on Frye. The ALJ sought to determine "whether Frye was suspended ... because of his protected concerted activities under the Act." While the ALJ found that the evidence showed "hostility and animus" between Frye and certain of the union's representatives, he also determined that the procedural claims were disproved by credited testimony, that there was "more than ample evidence to support" the charges brought against Frye, and that the harsher penalty imposed on Frye, as the leader of the others charged, was reasonable and consistent with the evidence. Although only one specific finding was quoted by the district court, placing undue emphasis on the penalty aspect, the full opinion of the ALJ demonstrates that the central issue of motivation and the central claim of discriminatory or retaliatory treatment were thoroughly addressed. We perceive no differences between the decision actually made by the ALJ and a decision that would be rendered by a district court in deciding a suit based on Title I of the LMRDA. *See Lamb v. Miller*, 660 F.2d 792, 794 (D.C.Cir.1981) (outlining appropriate district court analysis of LMRDA claims).

Frye's third argument, that the LMRDA allegations contain some matters not brought to the attention of the ALJ, is without merit. We do not agree with his assertion that there is a meaningful difference between the allegations. Even if there were other facts that could have been presented at the NLRB hearing, the fact that they were not brought to the ALJ's attention would not argue against application of collateral estoppel, as long as there had been an equal incentive to litigate the issue and if there were no other factors making estoppel unjust.

■ In summary, therefore, we reject all arguments presented in this appeal with respect to the application of collateral estoppel. The issues underlying Frye's allegation that the union violated his rights under Title I of the LMRDA were fully and fairly litigated in the earlier NLRB proceeding, and judgment on those issues was reached in a manner that did not differ to the extent that it would have affected the final decision.

### III.

■ Frye's second claim is that both Stivertson's and Swanders's charges did not meet the specificity requirements of section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5)(A) ("No member ... may be fined, suspended, expelled, or otherwise disciplined ... unless such member has been (A) served with written specific charges...."). The written charges should contain "a detailed statement of the facts relating to the [incident] that formed the basis for the disciplinary action." *Curtis v. International Alliance of Theatrical Stage Employees*, 687 F.2d 1024, 1027 (7th Cir.1982) (quoting *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 616, 28 L.Ed.2d 609 (1971)). Frye does not contend that he was in any doubt about the factual basis of either charge; the references in the written charges notified him of situations with which he was fully familiar. Swanders's complaint accused Frye and other officers of "violat[ing] my seniority rights by retaining Don King from lay-off by preferential seniority," and Stivertson's charge, as it was amended one month prior to the hearing, referred in detail to an incident in which Frye had informed him that his time as temporary foreman would expire in two days. The wrongful conduct alleged by Swanders is clear, and Frye was very familiar with Stivertson's reasons for objecting to the time limit Frye imposed on his temporary post. Frye objects to the specificity of the charges only because they did not state what rule or policy he violated. Swanders's charge referred to Article XII of the International's constitution, a provision listing many different offenses, and although Stivertson's amended charge contained no specific reference, his initial version had referred to Article XII.

Reference to a specific provision of the union's constitution or by-laws is not required to meet the specificity requirement of section 101(a)(5) for, as the Supreme Court noted in *Hardeman*, "a union may discipline its members for offenses not proscribed by written rules at all...." 401 U.S. at 244–45, 91 S.Ct. at 616. It is obviously more desirable for the factual basis of the charge to be specifically tied to the union law that it allegedly violates. *See Curtis*, 687 F.2d at 1027. However, to establish a violation of 101(a)(5)(A), a disciplined member must demonstrate that he was misled or otherwise prejudiced in the presentation of his defense. *Hardeman*, 401 U.S. at 245, 91 S.Ct. at 616.

In the case before us, there could have been no doubt about which provisions of the union's constitution were involved. With respect to both of the charges, Frye had been directed to Article XII. Of the fourteen subsections comprising that article, there are only two that could possibly have applied to the factual allegations in the charges. A third possibility, subsection (g), was known to be invalid well before the hearing. Subsection (m) describes as an offense "deliberately engaging in conduct in violation of the responsibility of members toward the organization as an institution." Subsection (n) concerns "deliberately interfering with the performance of the organization's legal or contractual obligations." A brief reading of the article would immediately call attention to these grounds, and, although the general wording of the subsections provides little in the way of direction, failure to list these in the charges did not deprive Frye of an opportunity to prepare his defense. Section 101(a)(5)(A) does not authorize the courts to determine the scope of offenses for which a union may discipline its members. *Id.* at 244, 91 S.Ct. at 616. While we neither condone the failure to list the specific provisions nor approve of the vague language of the subsections involved, we affirm the district court's ruling that the claim of inadequate written charges is without merit.

## IV.

Frye's final claim is that he was not afforded a "full and fair hearing" as required by section 101(a)(5)(C). He cites the following alleged inadequacies: 1) a new evidentiary hearing at the appellate level of the union hearing process was imposition of double jeopardy; 2) consideration of the Mix charges was improper and unfairly prejudiced the hearing panel; 3) the Commission took *ex parte* evidence and showed bias; and 4) punishment was imposed "without a principled basis" (a reference to the allegedly inadequate written charges).

In *Hardeman*, the Supreme Court made the following statement about the section's guarantee of a "full and fair" disciplinary hearing:

> [T]his guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. This is the proper standard of judicial review. We have repeatedly held that conviction on charges unsupported by any evidence is a denial of due process.

401 U.S. at 246, 91 S.Ct. at 617 (footnote omitted). The Court went on to state that a stricter standard "would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs." *Id.*

In a review of union disciplinary procedures, this court stated:

> While the union member need not necessarily be provided with the full panoply of procedural safeguards found in criminal proceedings, the fundamental and traditional concepts of due process do apply to the union disciplinary hearing. An essential element of a full and fair hearing is an impartial tribunal which arrives at a decision on the basis of evidence which the accused has an opportunity to confront and rebut.

*Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir.1975) (citations omitted). In *Tincher*, we held that section 101(a)(5)(C) had been violated where one of the hearing committee's members had been charged by the accused in a collateral proceeding and

where the hearing committee considered a prior invalid decision against the union member in reaching its decision. The Ninth Circuit later reviewed a number of cases dealing with the requirements of section 101(a)(5)(C) and concluded that the underlying concern is that "a union member not be found guilty based on evidence not presented at the disciplinary hearing." *Myers v. Affiliated Property Craftsmen Local No. 44*, 667 F.2d 817, 820 (9th Cir. 1982). Thus, a prejudgment of guilt by the hearing tribunal or a hearing at which no substantive evidence to support the charges is presented can violate the statute. *Id.* However, section 101(a)(5)(C) does not require that union disciplinary hearings incorporate the specific protections associated with judicial proceedings, including the right to be represented by counsel and the technical rules of pleading, procedure, and evidence. *Curtis v. International Alliance of Theatrical Stage Employees*, 687 F.2d at 1029.

■ Frye does not cite any authority for his assertion that the errors he notes here rise to the level required for a violation of section 101(a)(5)(C). We agree with the district court that Frye's contention in this respect is without basis; none of the claimed irregularities or the combination of all of them offend the traditional concepts of due process. Two of the allegations may be dismissed without further discussion. The claimed inadequacy of the written charges has been discussed above; we have determined that Frye was not misled or prejudiced by any of those claimed defects. His contention that a trial *de novo* by the International's Commission was improper as a matter of law is not supported by reason or authority. When, as here, there are allegations that decisions made at the local level have been biased or improperly handled, a trial *de novo* may be the preferred and appropriate procedure. *See Perry v. Milk Drivers' and Dairy Employees' Union*, 656 F.2d 536, 539 (9th Cir. 1981).

With respect to the Commission's consideration of the Mix charges, the record and Frye's own presentation of facts refute his claim that he was not given notice of these charges. In addition, it was not improper, on its face, for the Commission to receive evidence of these allegations concerning Frye's conduct as president along with evidence directly in support of the Stivertson and Swanders charges. It must be remembered that the central issue raised in those charges was Frye's alleged abuse of his power as president, and the central thrust of Frye's defense was that he was being unfairly attacked by others within the union. The Mix charges, therefore, had some relevance to the issue under consideration and, if they had been found to be totally unsupported, could have provided important evidence in support of Frye's contentions.

In a deposition, one of the members of the Commission stated that the Commission agreed to hear the Mix charges, when asked to do so by the International, because the parties were already present and could clear up the matter: "[W]e told Mix and everybody present what our view was, that it wasn't specific and didn't get under the right section. But since they were there, we were going to hear both sides of the story. Then that was as far as we were going to go with it. If anybody had had any objection, get specific, and go through the other channels or procedure, but he said go ahead, so we did." The Commission member also testified that it was not unusual for a Commission to investigate concerns that had not been presented to a local trial committee first.

No punishment was imposed on Frye in connection with these charges. Even if the matters involved in the Mix charges had some effect on the judgment of the Commission members, Frye had been given adequate notice of the charges and had an opportunity to confront and rebut the accusations that they contained. The fact that the Commission did not find support for all of the Mix charges demonstrates that he took advantage of this opportunity. In these circumstances, we cannot view inclusion of the Mix charges in the matters

considered by the Commission to have been a violation of section 101(a)(5)(C).

Frye's claim that the Commission was biased against him stems from what he terms the "ample evidence of hostility" toward him by members of the International. His history of opposition to union leadership was recognized by the ALJ in the unfair labor practice hearing. While a history of conflict and animosity between a member of a union and its governing body may set the stage for harsh or improper treatment of that member, charges that bias undermined the fairness of a disciplinary proceeding must be supported by specific factual allegations from which the operation of bias can be inferred. None of Frye's allegations meet this test.

The members of the Commission had not been involved in any of Frye's past disputes with the union hierarchy. Their actions in allowing one of the complaints (Stivertson's) to be amended at the appeals stage was reasonable in view of an intervening change in the interpretation of the union's constitution and the absence of any uncertainty about the facts on which the complaint was based. And the *ex parte* communication referred to by Frye was a letter sent to the Commission by William Noller, the International Staff Representative assigned to Local 3489. Noller later testified at the hearing, and Frye does not contend that he was deprived of the full opportunity to question him about any of his allegations or to rebut his statements. While Noller's act in sending a derogatory letter to the Commission may demonstrate his animus toward Frye, receipt of the letter does not necessarily implicate the impartiality of the Commission. These allegations are not sufficient to imply that the Commission was improperly biased against Frye.

## V.

In summary, we hold that Frye's claim that he was disciplined for exercising his rights of free speech was adequately and authoritatively determined by the NLRB proceeding, that the written charges on which he was tried were not impermissibly unclear, and that he was afforded a full and fair hearing guaranteed by section 101(a)(5)(C) of the LMRDA. Consequently, the decision of the district court is

AFFIRMED.