**James G. HURLEY, et al., Plaintiffs,**

v.

**STEAMFITTERS LOCAL UNION NO. 464, et al., Defendants.**

**No. CV 85-0-822.**

United States District Court, D. Nebraska.

May 20, 1988.

Donald W. Kleine, Joel L. Klausen, Kleine Law Office, Omaha, Neb., for plaintiffs.

Robert E. O'Connor, Omaha, Neb., Robert Matisoff, O'Donoghue & O'Donoghue, Washington, D.C., for defendants.

## MEMORANDUM

BEAM, District Judge, Sitting by Special Designation.

This matter is before the Court for disposition following a five day trial to the Court in November and December of 1987. The parties have submitted their arguments by way of post-trial briefs, and the case is now ripe for decision. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

## BACKGROUND

### The Parties

This action was brought by several active members [1] of Steamfitters Local No. 464 (the Local) against the Local, the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO (the International), and various officers of each,[2] seeking damages arising out of internal union disciplinary proceedings instituted against the plaintiffs in February of 1985. The International is a labor organization representing employees in the plumbing and pipefitting industry. It is composed of several hundred affiliated local unions and has a membership in excess of 300,000. Local 464 represents steamfitters, a classification of members in the International who work primarily with heating and cooling equipment. All members of the Local are subject to the rules and regulations set forth in the United Association Constitution and in the bylaws of the Local.

The daily affairs of the Local are governed by its officers, who are elected in accordance with procedures proscribed by the constitution. Local 464's officers consist of a president, vice-president, financial secretary, business manager, and a five member executive board, which includes and is chaired by the vice-president.

### The Charges

All of the plaintiffs, with the exception of Jerry Mainelli and Alvin Gruttemeyer, unsuccessfully sought election as an officer in the Local in May of 1984. Thereafter, the plaintiffs actively voiced their concern over various union matters at general membership meetings and at executive board meetings. It was the plaintiffs repeated attend-

---

1. The plaintiffs, each of whom testified at trial, are James G. Hurley, James J. Hurley, Gary L. Clark, Jerry W. Mainelli, Alvin T. Gruttemeyer, Patrick McEvoy, John McEvoy, and Claude Stoysich. Plaintiff Mark D. Kersten voluntarily dismissed his claims through counsel at the outset of trial.

2. Defendants Marvin J. Boede and Robert Stewart are officers of the International. All claims against these two defendants were dismissed during trial. Defendants Verlon Allen and Richard J. Jones are officers of the Local.

ance at executive board meetings which gave rise to this lawsuit.

During late 1984 and early 1985, the Local had a great deal of trouble maintaining order at its meetings. Meetings of the executive board and of the general membership were lasting well past scheduled adjournment, and the planned agenda was rarely completed. On several occasions, the police had to be called to maintain order, and meetings ended without any business being accomplished. Local officers attributed much of the disruption to the plaintiffs, and decided to implement certain policies so that the business of the Local could be effectively addressed. One of these policies was to close the meetings of the executive board to the general membership, allowing only officers and members of the board to remain in the meeting room. Each of the plaintiffs attended some or all of the executive board meetings held in December, 1984, January, 1985, and February, 1985, and were asked to leave the meeting by the vice-president. Each of the plaintiffs refused to leave when asked, asserting that they had business to bring before the board, and that they had a right to attend.

In response to these incidents, the vice-president of the Local, Verlon Allen, filed internal union disciplinary charges against the plaintiffs. Allen charged each of the plaintiffs with refusal to leave an executive board meeting upon request, and with disrupting an executive board meeting. The charges were directed to and filed with the International's General Executive Board. The International accepted the charges and appointed a hearing officer to conduct a hearing and propose recommended findings to the general executive board, in accordance with the procedure outlined in section 213(d) of the United Association Constitution.

*The Hearing*

The International appointed Joseph Sposita, the business manager of Plumbers Local 98 of Detroit, Michigan, as hearing officer for this matter. Sposita is one of a group of local union business managers designated as hearing officers to conduct internal hearings when appointed by the general executive board or the general president. While trained by the International, Sposita does not possess any formal legal education.

Sposita traveled to the offices of Local 464 in March of 1985 to conduct a hearing on plaintiffs' charges. Each of the plaintiffs was notified of the hearing time and place, each attended the hearing, and each was given an opportunity to present evidence and respond to the charged allegations. The hearing began at 7:00 P.M. on March 25, 1985, and continued until 1:34 A.M. the following morning. It resumed the next day at 10:00 A.M. and concluded that evening at 7:45 P.M. At the hearing, none of the accused denied that he refused to leave an executive board meeting when asked, but each argued only that he had a right to be in attendance.

Following the hearing, Sposita issued a written report with respect to the charges. He recommended that each of the plaintiffs be found guilty of violating his oath of obligation as a member of the Union, under section 161 of the United Association Constitution, by refusing to leave a local executive board meeting, an act Sposita found prejudicial to the best interests of the Union since it interfered with the Local's ability to carry out its responsibilities under the constitution. In addition, Sposita recommended that plaintiffs James G. Hurley and his son, James J. Hurley, be found guilty of violating section 208 of the constitution, for engaging in abusive, threatening and violent conduct toward members of the local executive board. Sposita recommended that the Hurleys each be fined $2500 and be suspended from union membership for six months, and that the remaining plaintiffs each be fined $500.

The general executive board adopted Sposita's recommendations as to the plaintiffs' guilt, but modified the recommended penalties. The board suspended $2000 of the fine imposed against the Hurleys, provided no further violations occurred within three years, and reduced the Hurleys' suspension to three months. The board also suspended the entire fines imposed against

the remaining plaintiffs, provided that no further violations occurred within three years.

Plaintiffs then filed this lawsuit on August 30, 1985, seeking damages and injunctive relief against the defendants pursuant to section 101(a)(5) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(5) (LMRDA). Plaintiffs allege that 1) the charges against them were improperly processed under section 213 of the United Association Constitution, 2) the plaintiffs were not afforded a full and fair hearing on the charges, and 3) there was insufficient evidence to support a finding of guilty on any of the charges. The defendants counterclaimed, seeking an injunction prohibiting the plaintiffs from further attendance at union meetings and from interfering with union business. At trial, the defendants voluntarily dismissed the counterclaim against all defendants except James G. Hurley and James J. Hurley. On May 4, 1987, the Court preliminarily enjoined the Hurleys from attending union meetings or from disrupting union activities. Defendants ask that the injunction be made permanent.

## DISCUSSION

■ At the outset, it is important to provide a perspective for discussion of the issues which are raised in the complaint. The LMRDA was passed not to provide federal courts with a vehicle by which to insert themselves into internal union affairs, but to incorporate basic due process standards into union disciplinary proceedings. Congress intended that disciplinary proceedings remain primarily under local union control. *See N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967); *Curtis v. International Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators*, 687 F.2d 1024, 1028 (7th Cir.1982). Even under the requirements of the LMRDA, local unions retain a significant interest in controlling internal discipline. *Curtis*, 687 F.2d at 1028. *See Wellman v. International Union of Operating Engineers*, 812 F.2d 1204, 1205 (9th Cir.1987). Congress's design in enacting the LMRDA

was to permit labor unions to govern their own disciplinary affairs in a manner deemed most appropriate by the union, so long as the manner chosen is within the broad confines of basic due process. *International Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971). There exists a general national policy against judicial interference in the internal affairs of unions, and it is within this framework that the Court shall address plaintiffs' claims. *See Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir.1975).

### A. Processing of Charges

■ Each of the plaintiffs' three claims is premised upon an alleged violation of 29 U.S.C. § 411(a)(5), a portion of the bill of rights section of the LMRDA. The statute reads as follows:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined ... unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

*Id.* Plaintiffs' first claim, brought under subpart (A) of this section, alleges that the disciplinary charges were improperly filed and processed under section 213 of the United Association Constitution, which pertains to offenses against the International. Plaintiffs contend that the charges should have been filed and processed under section 210, which pertains to offenses against a local affiliate. There is no dispute that the plaintiffs were fully and fairly informed of the nature of the charges, and of the alleged conduct which resulted in the charges. Plaintiffs simply challenge the procedure employed by the charging parties.

Section 213 of the constitution provides as follows:

> (a) When any offense is committed against the International Union or its officers including, but not limited to, a violation of the provisions of this Consti-

tution ... written charges may be filed ... and the General Executive Board shall have original jurisdiction to conduct the trial of such charges. * * *

(b) The General Executive Board shall have full discretionary power to accept, reject or may direct that the charges be referred to a Local Union, to be acted upon in accordance with Section 210 of the Constitution....

In this case, the disruption of the Local's executive board meetings was alleged in the charges, among other things, to have constituted a violation of plaintiffs' pledge as members under section 161 of the constitution, which prohibits any act "in any way prejudicial to the best interest of the United Association." Section 213 expressly includes within its scope violations of provisions of the International constitution. Thus, in accepting the charges against the plaintiffs and appointing a hearing officer to hear the case, the International apparently determined that the alleged violations of section 161 did in fact amount to an offense against the International. The same is true with respect to the disruption charges brought against the Hurleys, which were likewise premised upon a violation of a section of the International constitution.

Plaintiffs' principal complaint with regard to the charging party's use of section 213 rather than section 210 involves the differing manner in which charges are processed under each section. If charges are brought under section 210, they are subject to a vote of acceptance or rejection by the general membership of the Local. Under section 213, the decision to accept or reject the charges is made by the General Executive Board of the International. Additionally, the Local's executive board conducts whatever hearing is needed upon charges brought pursuant to section 210, while under section 213, the International appoints a hearing officer to hear the case and make recommendations. Under either procedure, the General Executive Board of the International is the point of final appeal. Verlon Allen, the charging party, testified that he brought the charges under section 213 to avoid conflict of interest problems, since many of the witnesses who would testify in the case were members of the Local's executive board.

The Court does not believe that these procedural differences support a claim under section 411(a)(5) in this case. In *Hardeman,* the Supreme Court explained that the LMRDA was "not intended to authorize courts to determine the scope of offenses for which a union may discipline its members." *Id.,* 401 U.S. at 244, 91 S.Ct. at 616. The Court said that the statute requires only that a union member be informed of the nature of the charges against him or her, and that the member not be mislead or otherwise prejudiced in the preparation of his or her defense. *Id.* at 245, 91 S.Ct. at 616. Section 411(a)(5) "gives courts no warrant to scrutinize the union regulations in order to determine whether particular conduct may be punished at all." *Id.* *See Frye v. United Steelworkers of America,* 767 F.2d 1216, 1222–23 (7th Cir.), *cert. denied,* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985); *Perry v. Milk Drivers' and Dairy Employees' Union, Local 302,* 656 F.2d 536, 539 (9th Cir.1981).

The Court finds that it was reasonable for the International to accept the charges filed by Mr. Allen as alleging legitimate offenses against the International. The Court notes that section 213 permits the International to refer the charges to the Local for processing under section 210, if such action is warranted in the view of the International. In this case, the International chose not to do so, but to accept the charges and appoint a hearing officer. Plaintiffs essentially ask the Court to interfere with a local union officer's choice to file charges under an unambiguous and explicit procedure set forth in the union constitution, or alternatively, to interfere with the International's choice not to refer the charges back to the Local for processing. Given the very limited scope of the Court's review of such decisions, the Court finds such interference unwarranted, and accordingly finds plaintiffs' claim in this regard to be without merit.

## B. Full and Fair Hearing

Plaintiffs' second claim is brought under subpart (C) of section 411(a)(5). Plaintiffs assert that they were not afforded a full and fair hearing to contest the charges against them, principally due to the conduct of hearing officer Sposita. Specifically, plaintiffs claim that Sposita refused to allow various plaintiffs to read prepared written statements into the record; rushed them in the presentation of their defense and improperly cut off their questioning of certain witnesses; excluded relevant evidence and testimony; spoke with and socialized with officers of the Local upon his arrival in Omaha and during recesses taken at the hearing; helped witnesses for the charging party word their testimony, and; improperly conducted off the record proceedings.

■ While section 411(a)(5)(C) prohibits the disciplining of any member by a union unless he is afforded a "full and fair hearing", it is well established that the member need not be provided with the full panoply of procedural safeguards afforded to criminal defendants. *See Frye,* 767 F.2d at 1223–24; *Gustafson v. American Train Dispatchers' Ass'n,* 788 F.2d 1284, 1287 (7th Cir.1986); *Murphy v. International Union of Operating Engineers, Local 18,* 774 F.2d 114, 124 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). Section 411(a)(5)(C) requires only that the union provide a charged member with the fundamental and traditional precepts of due process, including an impartial tribunal, notice of the charges, and an opportunity to confront his accusers and rebut their testimony. *Frye,* 767 F.2d at 1223; *Ritz v. O'Donnell,* 566 F.2d 731, 735 (D.C.Cir.1977).

■ The Court has examined the transcript of the disciplinary hearing conduct by Mr. Sposita, and has carefully considered the testimony of Mr. Sposita and the other individuals in attendance at the hearing. While there were some instances in which Sposita may not have conducted the proceedings in the same manner as would have been the case in a federal courtroom, the Court is convinced that he made a good faith and largely successful effort to conduct the proceedings in a fair and impartial manner. Each plaintiff was given an adequate opportunity to respond to the charges against him and to present evidence in his favor. The hearing lasted nearly two full days and encompassed virtually all of issues which the plaintiffs now identify as relevant to the charges. Sposita did exclude testimony which he thought repetitive and irrelevant, and did conduct proceedings off the record on a frequent basis, yet throughout the hearing remained fully aware of his duty to permit both sides to present their point of view, and often commented on his desire to conduct a hearing which would be acceptable to all concerned. While the hearing may not have been a model judicial proceeding, such can neither be expected nor demanded of an internal union disciplinary matter. The Court finds that all plaintiffs were afforded the basics of due process in the hearing of their charges in this case. Their arguments to the contrary are without merit.

## C. Sufficiency of the Evidence

■ Plaintiffs also suggest that their was insufficient evidence to support a finding of guilt on the offenses charged. The Court's review of such a claim is extremely limited. In *Hardeman,* the Supreme Court held that a union disciplinary conviction should be upheld so long as there is "some evidence at the disciplinary hearing to support the charges made." *Hardeman,* 401 U.S. at 246, 91 S.Ct. at 617. The Court believes that this standard has been satisfied in this case.

With respect to each plaintiff's conviction under section 161 of the United Association Constitution, for violating the oath of obligation, it is undisputed that each plaintiff failed to leave an executive board meeting when asked. Regardless of whether the plaintiffs possessed some "right" to be present, the International found that their refusal to leave when requested to do so by the vice-president was an offense prejudicial to the best interest of the union. There was undoubtedly some evidence

presented at the hearing to support each plaintiff's conviction on such a charge.[3]

Gary Clark is the only plaintiff to have presented a potentially viable defense to this charge. He claims that he was a member of the Local's Vacation Board at the time in question, and therefore was not required to leave the executive board meetings, since Mr. Allen said that "duly elected officers" could remain in the room. However, there was testimony that at the February 21 meeting of the executive board, a request was made that the board sit in "executive session", and all those present not a member of the executive board were asked to leave. Clark refused. The Court finds that this incident provides a sufficient basis for Clark's conviction of a violation of section 161.

As noted, the plaintiffs' principle argument during trial, and at the disciplinary hearing, was that they had a "right" to be in attendance at executive board meetings. Whether or not this is the case, a question the Court need not and does not decide today, it is not disputed that each plaintiff failed to leave a meeting when requested. It is not for this Court to pass on the union's decision to interpret its constitution to make such conduct a punishable offense. *Hardeman*, 401 U.S. at 244–45, 91 S.Ct. at 616. The Court must only determine that there was some evidence presented to support the union's action, and that the members were afforded a full and fair hearing on the charges. Both of these requirements have been satisfied in this case.[4]

## D. Damages

■ Even if the Court were to find in favor of the plaintiffs on any of their claims, judgment could not be entered in their favor on this record for lack of any evidence of damages. Each plaintiff testified generally that his reputation among his fellow workers was injured as a result of the charges, and each testified to a general lack of available work following the convictions. However, no direct evidence was presented from which the Court could quantify whatever losses the plaintiffs may have incurred. In fact, the Court chooses to place greater weight upon the testimony of Local officers that the lack of available work in this period resulted from a general economic slowdown, rather than any employer or co-worker reaction to the filing of charges. It would amount to complete speculation for the Court to assess damages in this matter, even if the plaintiffs had successfully proven their underlying claims.

## E. Defendants' Counterclaim

■ Defendants seek a permanent injunction barring James G. Hurley and James J. Hurley from attending any Local union meeting and from otherwise interfering with the operation of the Local. There was substantial evidence presented at trial regarding the Hurleys' repeated vocal and physical harassment of various officer of the Local. Verlon Allen and Robert Jones testified to being shoved, punched, and pushed to the ground by both of the Hurleys on more than a single occasion. At nearly every general membership and executive board meeting in early 1985, James G. and James J. Hurley used profanity, made threats against presiding officials, and acted in a generally disruptive and unruly manner. On at least one occasion, the police were called to the Local's meeting hall to assist in escorting the Hurleys from the building. During visits to the Local's offices, the Hurleys harassed and threatened office employees, bombarded them with profanities, attempted to break down an inner door, and pounded on and

---

**3.** The Court also finds that there was sufficient evidence to support the additional penalties imposed upon James G. Hurley and James J. Hurley pursuant to section 208 of the constitution, for "making threats of physical violence or harm or ... actually physically assault[ing] a Local Union officer." The specific evidence supporting these charges will be addressed in detail in part E of this opinion.

**4.** In their post-trial brief, plaintiffs argue for the first time that the defendants' activities deprived them of their right of free speech under 29 U.S.C. § 411(a)(2). This issue was not included within the pre-trial order in this case, was not addressed during trial, and shall not be considered by the Court.

eventually knocked out a plexiglass window with their fists. There was evidence that the Hurleys used the telephone to prevent the normal operation of daily business, calling the office two times a minute over the course of several hours. Several of these episodes led to the successful prosecution of criminal charges against the Hurleys. In summary, there is ample evidence to support a conclusion that the Hurleys have engaged in a pattern and practice of intentional harassment against the Local, its officers and employees.

The Hurleys assert that much of their violent and unruly activity was encouraged and incited by the conduct of Local officers. While there is certainly no excuse for most of the Hurleys' conduct, the Court believes that there is some truth to their claim. There was evidence which, at least inferentially, indicated that the Local may have arbitrarily denied the Hurleys and the other plaintiffs access to documents, and that the Local may not have dealt with the plaintiffs on an equal basis with regard to advising them of available employment. The Court believes that the Local handled this matter with a heavy hand, which may have, in part, been responsible for the plaintiffs' strong feelings on disputed issues, and their subsequent conduct.

In any event, with the caveat that there appears to be some fault on both sides in this matter, the Court finds that the defendants are entitled to limited relief on their counterclaim. The Court shall enter an order permanently enjoining the Hurleys from attending executive board meetings and general membership meetings of Local 464, except under certain circumstances. The Hurleys shall be permitted to attend executive board meetings only when summoned or referred to the board, in writing, by the Local president, vice-president, business manager, or an executive board member. They shall be allowed to attend such meetings only for the portion of the meeting during which the specific business for which they are referred is being addressed, and then only if they participate exclusively upon being recognized by the chair, and pursuant to the appropriate rules of order. The Hurleys shall be permitted to attend general membership meetings, but shall participate only upon being recognized by the chair, and pursuant to the appropriate rules of order. Enforcement of this injunction shall be predicated on the Local providing to the Hurleys and to all other plaintiffs, copies of minutes and other union documents, normally available to the general membership, at the Hurleys' expense. The expense charges shall not exceed absolute cost to the Local or the amount charged other members for the same or similar services, whichever is less. Further, the Court shall refuse to enforce the injunction if any party presents evidence of discriminatory activity by the Local in the administration of the out-of-work list, or any other regular administrative activity undertaken by the Local. The Court believes that such an injunction is tailored to the facts presented, and is hopeful that it will help assist the Local on its journey back to a normal and effective existence.

This case vividly demonstrates how internal conflict and dissent within an organization can destroy the organization's effectiveness in addressing the legitimate concerns of its members. Local 464 has spent an incredible amount of time attempting to deal with and resolve internal conflict, when the focus of its activities should have been elsewhere. The Court has little doubt that the general membership of the Local has suffered as a result of the actions of all parties to this lawsuit. The Court files its opinion with the hope that Local 464 can close the door on this particular internal dissent, and get back to the business for which it was formed.

An order in conformance with this memorandum shall be entered this date.

### ORDER

In conformance with the memorandum opinion entered this date,

IT IS ORDERED as follows:

1. Judgment should be and hereby is entered in favor of the defendants and against the plaintiffs on each of plaintiffs claims. Plaintiffs claims should be and hereby are dismissed.

2. Judgment should be and hereby is entered in favor of defendants and against plaintiffs James G. Hurley and James J. Hurley on the defendants counterclaim, as set forth in the accompanying memorandum.

3. James G. Hurley and James J. Hurley should be and hereby are permanently enjoined from attending meetings of Steamfitters Local 464, and from interfering with the operation of Steamfitters Local 464, except as follows:

A. James G. Hurley and James J. Hurley shall be permitted to attend executive board meetings only when summoned or referred to the board, in writing, by the Local president, vice-president, business manager, or an executive board member. They shall be allowed to attend such meetings only for the portion of the meeting during which the specific business for which they are referred is being addressed, and then only if they participate exclusively upon being recognized by the chair, and pursuant to the appropriate rules of order.

B. James G. Hurley and James J. Hurley shall be permitted to attend general membership meetings, but shall participate only upon being recognized by the chair, and pursuant to the appropriate rules of order.

C. This injunction shall be predicated upon the following:

1) The Local shall provide copies of meeting minutes and other union documents normally available to the general membership to the plaintiffs upon request at plaintiffs' expense; and

2) The Local shall not discriminate against the plaintiffs in the administration of the out-of-work list, or any other regular administrative activity undertaken by the Local. Evidence of such discriminatory activity shall be a complete defense to enforcement of this injunction against any party.