**AMOCO OIL COMPANY,**
Plaintiff–Appellee,

v.

**Donald V. JOHNSTONE,**
Defendant–Appellant.

No. 87–2916.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1988.

Decided Sept. 14, 1988.

H. Kennard Bennett, Indianapolis, Ind., for defendant-appellant.

William P. Wooden, Wooden McLaughlin & Sterner, Indianapolis, Ind., for plaintiff-appellee.

Before WOOD, Jr., and KANNE, Circuit Judges, and REYNOLDS, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The only issue is whether or not collateral estoppel, or issue preclusion, is applicable to this second lawsuit between the same parties.[1] In a bench trial the district judge held that it was.

Plaintiff Amoco Oil Company (Amoco) brought this suit seeking declaratory judgment that Amoco, under the Petroleum Marketing Practices Act (PMPA), had properly terminated or nonrenewed a lease with defendant Donald V. Johnstone as lessee of an Amoco station, known as the Nora Station, in Indianapolis, Indiana. Amoco further sought an order that defendant deliver possession of the station to plaintiff.

## I. FACTUAL BACKGROUND

Plaintiff Amoco, a marketer of gasoline petroleum products, entered into two leases, and two Dealer Supply Agreements accompanied by Meter Marketing Plan riders (MMP) and other agreements, with defendant Johnstone involving two separate gasoline stations. One set of agreements involved the Nora Station and covered the period March 1, 1983 to February 28, 1986. The other set involved a separate gasoline station known as the Belle Meade Station.

The present case involves primarily the Nora Station, and the Belle Meade Station only indirectly.

Prior to the present suit Johnstone, as plaintiff, in October 1984, had filed suit against Amoco as defendant in the same federal district, but before a different judge, Judge Dillin, alleging that certain provisions of the MMP riders attached to the supply agreements with respect to both the Nora Station and the Belle Meade Station violated the Indiana Deceptive Franchise Practices Act. Johnstone sought to have the court declare those provisions invalid and to reform each of the MMP riders.

In November of 1985, Amoco by letter sought to terminate or nonrenew the lease and franchise relationship with the defendant regarding the Nora Station, effective when the lease expired in February, 1986. That letter, by which Amoco sought to comply with the requirements of the PMPA, stated that the company had determined that to renew the lease would be uneconomical for Amoco despite any reasonable changes in terms that might be acceptable to the defendant, a termination reason recognized under the Act. The letter also contained a Summary of Dealer Rights at Termination and Non–Renewal. In conformance with the Act, Amoco offered to sell the station to Johnstone for a given price and agreed to keep the offer open for ninety days. Offers and counteroffers followed during the original time provided, and during an extension by Amoco, but did not culminate in a signed sales agreement. Johnstone tendered an earnest money check, but because he did not deliver signed sales documents, Amoco returned the check to him. These negotiations gave rise to Johnstone's unsuccessful contract counterclaim.[2]

---

*The Honorable John W. Reynolds, of the Eastern District of Wisconsin, is sitting by designation.

1. The district court found ample jurisdiction to hear the case under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801–2841 (PMPA); the Declaratory Judgment Act, 28 U.S.C. § 2201; and by reason of diversity, 28 U.S.C. § 1332.

2. Another issue before the district court was whether the parties had entered into a contract for the sale of the gas station in question by plaintiff, Amoco Oil Company, to defendant, Donald V. Johnstone. That issue was decided adversely to Johnstone on his counterclaim for specific performance, but he does not raise the issue on appeal.

The original claim filed by Johnstone against Amoco seeking to reform parts of their leasing arrangements was tried in May, 1986, and thereafter judgment was entered in favor of Amoco. Johnstone appealed, but in May, 1987, voluntarily dismissed his appeal. The proceedings in that case led Judge Noland in this, the second case, also to enter judgment for Amoco on the basis of collateral estoppel, or issue preclusion. We must, therefore, examine Judge Dillin's findings and judgment in the first case to determine their effect on the second case.

In the first case Amoco, by amendment, raised its defense that the Dealer Supply Agreement and Meter Marketing Plan rider, which Johnstone, as plaintiff, had attached to his complaint relating to the Nora Station, had by their terms expired on February 28, 1986, prior to trial. Amoco further alleged that prior to that date Amoco had given Johnstone notice of its intent to terminate or nonrenew the leasing arrangement for the Nora Station which included documents by which Amoco proposed to sell the station to Johnstone, in accordance with the provisions of the PMPA. Amoco claimed in the first case that any issues involving the validity of the MMP for the Nora Station were therefore moot.

Judge Dillin agreed with Amoco, finding that the leasing arrangements for the Nora Station had expired, and that Amoco had given Johnstone notice of its intention to terminate or nonrenew the leasing arrangements in accordance with the PMPA.

## II. ANALYSIS

In this court Johnstone claims that Judge Dillin's findings in the first case should not collaterally estop him from attempting to prove in defending this suit that Amoco had not in fact terminated its relationship with him in accordance with the PMPA. That issue, he argues, was not mooted by Judge Dillin's findings and order. We need, therefore, to briefly examine the doctrine of collateral estoppel and determine whether it is properly used as a bar in the present case.

Collateral estoppel, or issue preclusion, is not a mysterious doctrine. In essence it says that courts have enough to do without unnecessarily doing things twice, thereby increasing the chance for inconsistent results. In *County of Cook v. Midcon Corp.*, we set forth the generally recognized principles:

> In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgment, and (4) those issues are identical to issues raised in the subsequent suit.

773 F.2d 892, 898 (7th Cir.1985).

Johnstone calls to our attention *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327–28, 331, 99 S.Ct. 645, 649–50, 651, 58 L.Ed.2d 552 (1979), which modifies the first listed criterion so that in some circumstances mutuality of parties is not necessary. In the present case, however, the mutuality of the parties is conceded.

In *Frye v. United Steelworkers of America*, 767 F.2d 1216, 1220–21 (7th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985), this court elaborated on the use of collateral estoppel, although in the context of administrative agency decisions. We held that an express finding of fact or law in an earlier judgment will have a preclusive effect if that finding was necessary and essential to the earlier judgment. Both parties cite *Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21, 28 (2d Cir.1983), a case that states the same criteria in negative terms. The imposition of collateral estoppel in *Wickham* was held to be improper if the relevant factual finding was not critical and essential to the earlier case and therefore offered the parties little incentive to litigate.

The PMPA regulates the relationship between oil companies, such as Amoco, and their franchisees, such as Johnstone. It sets forth the substantive grounds which

can justify a nonrenewal or termination of the franchise relationship and prescribes certain procedures and conditions for any termination or nonrenewal.[3] In general, the oil company must give ninety days' notice of termination or nonrenewal, and extend to the franchisee a bona fide offer to sell during the notice period. Amoco, at least facially, met the substantive and procedural requirements by providing timely notice of termination or nonrenewal as a result of its determination, made in its normal course of business and in good faith, that renewal of the franchise would likely be uneconomical to Amoco, even considering any reasonable changes or additions to the franchise which might be acceptable to Johnstone. Amoco extended an offer to sell, which Johnstone did not accept.

Johnstone argues that the application of collateral estoppel unjustly denies him the opportunity to dispute Amoco's stated grounds for nonrenewal or termination, and the question of whether Amoco's offer to sell was bona fide. It is Johnstone's position that the district court in the first case did not hear evidence, nor otherwise consider the merits of Amoco's compliance with the PMPA in terminating or nonrenewing the franchise agreements for the Nora Station. Johnstone also argues that the court's findings of fact and conclusions of law in the first case cannot be construed to suggest such an adjudication. "The findings of fact themselves," Johnstone argues, simply reiterate what is not disputed; that (a) the terms of the franchise agreement between Amoco and Johnstone expired by their own terms on February 28, 1986; and (b) Amoco gave notice of its intention to terminate or nonrenew the relationship by way of its letter of November 18, 1985 in the manner required by the PMPA. Johnstone then argues that the findings were not enough because "[n]o finding of fact was made with regard to any factual issue necessary to determine if the notice of termination or nonrenewal was upon proper grounds or whether Amoco's offer to sell its interests in the premis-

es to Johnstone was a 'bona fide offer' as required by he [sic] PMPA."

In *Frye*, we considered an analogous situation and stated that

> [e]ven if there were other facts that could have been presented at [trial] the fact that they were not brought to the [court's] attention would not argue against application of collateral estoppel, as long as there had been an equal incentive to litigate the issue, and if there were no other factors making estoppel unjust.

767 F.2d at 1222.

It must be remembered that in the first suit between these parties Johnstone sued Amoco, seeking to reform certain aspects of their franchise arrangements. When the Nora Station lease expired by its own terms and bargaining in accordance with the PMPA produced no contract of sale, the Nora Station reverted to Amoco, and the controversy was over. Johnstone had no further legal interest in the Nora Station, and it would therefore be futile to try to reform a franchise that was no longer in existence. If Johnstone, as he claims, had valid defenses to any termination by Amoco the first case provided him with the time and place to offer those defenses. The issue of the Nora Station franchise's viability was put in issue by Amoco. The court then found the station's status had been resolved and all was moot. There was little more that Judge Dillin could say about the matter if the defendant held back and did not deny mootness nor offer any of the defenses he now claims to have had to demonstrate that the case was not moot because the PMPA had not been properly complied with by Amoco.

It was up to Johnstone either to show why his claim was not moot or suffer the loss of that part of his own lawsuit as to the Nora Station. If he had for some reason been prevented from making his defense in that trial court he could have raised that issue on appeal. He did neither and voluntarily dismissed his appeal. We cannot now retry that part of Johnstone's first lawsuit in this second suit of Amoco.

3. 15 U.S.C. § 2802(b)(3)(D)(i)(IV).

It appears that Johnstone may have misperceived what was happening in the first suit and what its effect could be, but it should have been obvious. If Johnstone did not have the incentive to appeal the mootness issue vigorously in his own suit against Amoco, particularly when Amoco's suit against him was still pending, Amoco should not be penalized for Johnstone's lack of original incentive. The issue was critical both to his own case and in Amoco's case, cases that involved more than small or nominal damages. *See Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. at 651. The incentive that now impels Johnstone to litigate the same issue with the same party comes too late.

The litigation of the first case developed in a relatively short period of time so as to require attention, thought, and action by Johnstone. If he thought the timing was prejudicial he should have so informed the court and sought an extension. If the court denied his motion, Johnstone would have had another issue to raise in the appeal which he abandoned. Johnstone failed to make any unfairness argument in the district court in opposition to the court's application of collateral estoppel, an argument he raises here, but in any event we see no prejudice to Johnstone for which he was not responsible.

In our view all of the requirements for the application of collateral estoppel were met. The issue of the propriety of the termination or nonrenewal of the lease already had been adequately resolved. There was nothing left for Judge Noland to do except enter judgment for Amoco, which he did, and which we must affirm.

Each party shall bear his or its own costs.

AFFIRMED.